## OPINION OF THE JUSTICES OF THE SUPREME COURT IN RESPONSE TO A QUESTION PROPOUNDED BY THE GOVERNOR OF DELAWARE

*(October 23, 1961.)*

To His Excellency Elbert N. Carvel, Governor of Delaware:

The Justices of the Supreme Court refer to your letter dated September 19, 1961, addressed to the Chief Justice, propounding a question upon which the opinions of the Justices are requested, pursuant to the provisions of 29 *Del. C.* § 2102.

The facts giving rise to the question are set forth in your letter as follows:

"A bill was introduced in the House of Representatives, passed by the House of Representatives, passed by the Senate,

returned to the House of Representatives by the Senate, delivered to the Governor by the Chairman of the Passed Bills Committee of the House and then recalled from the Governor by a House Resolution on the 10th day after which the bill was delivered to the Governor. I returned the bill to the Chairman of the Passed Bills Committee of the House pursuant to the request of the Resolution."

The question to be answered is:

"Can this bill be legally recalled from the Governor by the unilateral action of the House of Representatives, or did it automatically become law since not vetoed by the Governor?"

Our constitution has no provision dealing specifically with the right of the General Assembly, or of one house thereof, to recall from the Executive a bill which has passed both houses and has been delivered to the Governor in accordance with the provisions of Section 18 of Article III.

Nevertheless the answer to your question is implicit in the provisions for the passage of legislation. Any bill or joint resolution requires for passage the concurrence of a majority of all the members elected to each House. Article II, Section 10. The delivery of the bill to the Governor is based upon the joint action of the two houses. If any subsequent legislative action can lawfully be taken to affect the status of the bill in the Governor's hands (a question not presented to us) it must likewise be joint action. In our opinion one house has no such power of recall, even with the Governor's consent.

Such legal precedent as we have found supports this view.

In *People v. Devlin*, 33 *N. Y.* 269, the facts were similar to those set forth by you. A bill had passed both houses of the legislature and was duly delivered to the Governor. On the next day the assembly (the lower house) requested its return. The Governor complied, stating in his message that it was returned at the request of the assembly. Further proceed-

ings then ensued. The House attempted to strike out a certain section of the bill, and the Senate refused to agree. After adjournment without further action, the bill was sent to the Governor by the Clerk in its original form, and he signed it.

The validity of the act was questioned on the ground that it had never finally passed both houses of the legislature. To this two answers were made: (1) that the enrolled bill could not be impeached by examination of the legislative journals, and (2) that even if the court had the power to go back of the enrolled bill and examine the journals, it must be determined that the bill had not been effectively recalled. The court agreed with both contentions. As to the latter it said:

"The law had its origin in the assembly. The bill was introduced and was considered in all its stages, and passed and sent to the senate for concurrence. It met the approval of the senate, and was passed by that house without amendment, and after such passage, was returned to the assembly, as signed by the presiding officers and sent to the governor. This was according to well-established parliamentary usage and law. The legislature had declared its will. No further separate action was required or allowed. The streams issuing from senate and assembly fountains had flowed together and were now united in one. The united action of both houses would be necessary to recall the bill."

The Court also said:

"This bill had passed both houses and been sent to the governor for his approval. The recall by the assembly was an infringement of parliamentary law. It was an attempt to do alone what if it could be done at all, required the joint action of both senate and assembly."

To the same effect is *State ex rel. Florida Portland Cement Co. v. Hale*, 129 *Fla.* 588, 176 *So.* 577, 581. A bill passed by both Senate and House was delivered to the Governor

and thereafter, at the request of the House, returned by the Governor to it. Thereafter the legislature adjourned *sine die* without acting on the bill, and the Speaker transmitted the bill to the Secretary of State for enrollment. The court said:

"We hold that neither the House of Representatives nor the Senate of the Legislature of Florida could by its independent resolution recall from the hands of the Governor a bill which had been duly passed by the Legislature, had been authenticated and transmitted to the Governor for his consideration, and that the action of the Governor in transmitting the bill to the House of Representatives in the instant case was a matter of courtesy and had no effect upon the validity of the act which had been duly and constitutionally passed and transmitted to him for his consideration."

We think that these cases embody a sound rule of law. One house of the legislature may not lawfully recall from the Executive a bill duly enacted by both houses.

Since the return of the bill by you in this case was ineffectual, it must follow that it became law under the provisions of Article III, Section 18 of the Constitution, *Del. C. Ann.* That section provides that after a bill has been presented to the Governor, it is his duty to sign it if he approves, or, if he shall not approve, to return it with his objections to the house in which it originated, and that thereafter the bill shall be reconsidered by both houses. Failure of the Governor to comply with this procedure brings into play the subsequent provisions of Section 18, as follows:

"If any bill shall not be returned by the Governor within ten days, Sundays excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly shall, by adjournment, prevent its return, in which case it shall not be become a law without the approval of the Governor."

Similar provisions in the Virginia Constitution were held applicable to a case in which the legislature had recalled a bill by joint resolution. See *Wolfe v. M'Caull*, 76 *Va.* 876. The Supreme Court of Appeals of Virginia held that the joint action of both houses was insufficient to recall a bill once it had been delivered to the Governor. The Governor's return of the bill upon request was held, as in the *Devlin* case, to be an act of courtesy only, and to confer no power upon the legislature to act upon it. Hence, there had been no lawful return of the bill in the manner specified or within the time required by the Constitution. It therefore became a law by reason of the Governor's failure to return it. 76 *Va.* 891.

It is unnecessary for us to express any opinion upon the main holding in this case; it is cited to support our opinion that if there is no effective return of the bill by the Governor it becomes law under Section 18 of Article III.

The answer to your question is that in our opinion the bill referred to in your letter automatically became law.

The foregoing represents the opinion of all the members of the Court.

Respectfully submitted,

C. A. SOUTHERLAND,
Chief Justice

DANIEL F. WOLCOTT
Justice

WM. DUFFY
Judge.